

JUDGE SWEET

14 CV 7121

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAUL GONZALEZ, JR.,

                    Plaintiff,

         -against-

CITY OF NEW YORK, GERARD STAPLES,
Individually, JERRY RIVERA, Individually,
CARINA HERRERA, Individually, and JOHN
DOE 1 through 5, Individually, (the names John
Doe being fictitious, as the true names are
presently unknown),

                    Defendants.

**COMPLAINT**

Docket No.

<u>**Jury Trial Demanded**</u>

RECEIVED SEP 04 2014 U.S.D.C. S.D.N.Y. CASHIERS

       Plaintiff SAUL GONZALEZ, JR., by his attorney, The Trainor Law Firm, P.C., complaining of the defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

       1.    Plaintiff brings this action for compensatory damages, punitive damages, and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of his civil rights, which are secured by these statutes and the Constitutions of the United States and the State of New York. Plaintiff also asserts supplemental state law claims.

## JURISDICTION

       2.    Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

       3.    This Court has jurisdiction to hear all claims in this matter pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

## VENUE

4.     Venue is properly laid in the Southern District of New York pursuant to 28 U.S.C.

§ 1391(b) because this is the District in which the claim arose.

## JURY DEMAND

5.     Plaintiff respectfully demands a trial by jury on all issues in this matter pursuant

to Federal Rule of Civil Procedure 38(b).

## PARTIES

6.     Plaintiff SAUL GONZALEZ, JR., is a twenty-one year old United States Citizen

and male of Hispanic origin who resides in New York, New York.

7.     Defendant CITY OF NEW YORK was and is a municipal corporation duly

organized and existing under and by virtue of the laws of the State of New York.

8.     Defendant CITY OF NEW YORK maintains the New York City Police

Department ("NYPD"), a duly authorized public authority and/or police department, authorized

to perform all functions of a police department as per the applicable sections of the

aforementioned municipal corporation, the CITY OF NEW YORK.

9.     At all times hereinafter mentioned, the individually named defendants, GERARD

STAPLES (Shield No. 24526), JERRY RIVERA (Shield No. 31633), CARINA HERRERA

(Shield No. 23623), and JOHN DOE 1 through 5 (Shield Nos. unknown), were duly sworn

police officers of the NYPD and were acting under the supervision of the NYPD and according

to their official duties.

10.     At all times hereinafter mentioned, the defendants, either personally or through

their employees, were acting under color of state law and/or in compliance with the official rules,

regulations, laws, statutes, customs, usages, and/or practices of the State of New York and/or the

2

CITY OF NEW YORK.

11.    Each and all of the defendants' acts alleged herein were done by these defendants while acting within the scope of their employment with Defendant CITY OF NEW YORK.

## **FACTS**

12.    On September 27, 2013, between 8:00 p.m. at 9:00 p.m., Plaintiff SAUL GONZALEZ, JR., ("Mr. Gonzalez") was lawfully present in front of his apartment building, located at 149 East 118th Street, New York, New York, when Defendants Staples, Rivera, Herrera, and John Doe 1 through 5, without any lawful justification whatsoever, unlawfully assaulted him, knocked his tooth out, and illegally arrested and imprisoned him.

13.    Before, during, and after the defendants beat him up and arrested him, Mr. Gonzalez committed no crime or offense.  Likewise, at all times relevant to these events, Mr. Gonzalez was not behaving in a manner that would suggest to any reasonable police officer that he had done anything unlawful.

14.    At the aforementioned time and place, Mr. Gonzalez was sitting on the front stairway of his apartment building alone when Defendant Staples demanded to see his identification.  Taken aback by this unprovoked and unfounded demand, Mr. Gonzalez asked Defendant Staples why he wanted his identification and explained that he lived in the building. Defendant Staples responded, in sum and substance, that he wanted to see Mr. Gonzalez's identification because he wanted to see his identification.

15.    Despite this unjustified demand, Mr. Gonzalez had his New York State non-driver's license identification on his person and went to give it to Defendant Staples.  Mr. Gonzalez was sitting on the top step of the stairway.  As Mr. Gonzalez stood up in order to obtain his wallet from his pocket where he kept his identification card, Defendant Staples,

3

without any legal justification whatsoever, reached up from the bottom step, grabbed Mr. Gonzalez by the front pocket of his hoody sweatshirt, pulled him down the stairs by his pocket, and threw him to the concrete floor.

16.     Once he threw Mr. Gonzalez to the ground, Defendant Staples began punching and kicking him.  Defendant Rivera, who was with Defendant Staples from the inception of their illegal confrontation with Mr. Gonzalez, then began punching and kicking Mr. Gonzalez in tandem with Defendant Staples.

17.     Almost immediately after Defendants Staples and Rivera began beating up Mr. Gonzalez, Defendants Herrera and John Doe 1 through 5 joined this gang assault upon Mr. Gonzalez.  These defendants actively participated in beating up Mr. Gonzalez and failed to intervene to prevent Defendants Staples and Rivera from doing so.

18.     While the defendants were punching and kicking Mr. Gonzalez, they pulled his arms forcibly behind his back and rear-handcuffed him, despite lacking any legal basis whatsoever to do so.  Then, while Mr. Gonzalez was beat down, defenseless, and in substantial pain, one of the defendants grabbed the hooded portion of Mr. Gonzalez's sweatshirt, raised his head up by his neck with the hood, and then smashed Mr. Gonzalez's head onto the concrete ground, which knocked Mr. Gonzalez's tooth out of his mouth.

19.     Not content with the beating and injuries they gave him, one of the defendants picked Mr. Gonzalez up from the ground, while he was rear-handcuffed, and pushed him into a concrete wall.

20.     Despite lacking probable cause, reasonable suspicion, and having no legal justification whatsoever, the defendants placed Mr. Gonzalez in an NYPD vehicle, and transported him to an NYPD Precinct, where he remained unlawfully imprisoned and in pain,

4

suffering the effects of being violently assaulted by the defendants.

21.    The defendants placed Mr. Gonzalez in jail cell at an NYPD Precinct, and the pain from the beating the defendants gave him was too much for him to bear.  He requested medical attention, and the defendants transported him to Bellevue Hospital for treatment for his injuries.   While in Bellevue Hospital, the defendants handcuffed Mr. Gonzalez to a chair. Medical personnel advised him to see a dentist for treatment for his knocked-out tooth and dispensed a pain reliever for his pain.

22.    As a result of the defendants' violent and illegal assault upon him, Mr. Gonzalez sustained the following injuries, including, but not limited to, a broken tooth; an exposed nerve; contusions and bruising; swelling; bleeding from the mouth; jaw pain; substantial pain; persistent discomfort; physical and psychological distress; and further physical and psychological injuries yet to be revealed.

23.    Additionally, the physical injuries that Mr. Gonzalez received as a result of the defendants assaulting him and knocking out his tooth compelled him to have an emergency root canal performed on the nerve of the knocked-out tooth, a crown placed in his mouth, and follow-up visits with the dentist.

24.    Upon Mr. Gonzalez's release from Bellevue Hospital, the defendants transported him to the Manhattan Detention Complex, where he remained unlawfully imprisoned until he was brought before the New York County Criminal Court for arraignment on the baseless charges filed under docket number 2013NY074575.  These charges were filed based upon the false allegations of Defendant Staples.

25.    Defendant Staples manufactured the underlying false allegations and forwarded this information to the District Attorney's Office knowing that it would be used against Mr.

5

Gonzalez at trial.

26.     After midnight, on September 30, 2013, Mr. Gonzalez was arraigned on the false charges filed under docket number 2013NY074575.  Upon arraignment, the presiding Criminal Court judge released Mr. Gonzalez on his own recognizance.

27.     Prior to his release at arraignment, Mr. Gonzalez spent approximately fifty-two (52) hours falsely imprisoned.

28.     The defendants arrested and initiated criminal proceedings against Mr. Gonzalez despite their knowledge that they lacked probable cause, reasonable suspicion, or any justification whatsoever to do so.

29.     The defendants initiated this prosecution for the purpose of covering up their unlawful and unjustified assault upon Mr. Gonzalez.

30.     This false arrest, denial of Mr. Gonzalez's fair trial rights, and malicious prosecution compelled him to return to the New York County Criminal Court to face these false charges on November 24, 2013, and then again on December 18, 2013, when the Criminal Court judge dismissed this malicious prosecution against Mr. Gonzalez outright.

31.     All of the events leading up to and culminating in Mr. Gonzalez being subjected to excessive force, false arrest, denial of fair trial rights, and malicious prosecution occurred while other NYPD officers, including, but not limited to, the individually named defendants, either participated in or failed to intervene in the illegal conduct described herein despite having every opportunity to do so.

32.     All of these events occurred as a direct result of the unconstitutional policies, customs, or practices of Defendant CITY OF NEW YORK, including, but not limited to, the inadequate screening, hiring, retaining, training, promoting, compensating, disciplining, and

supervising of its employees.

33.    The underlying application of excessive force, false arrest, denial of the right to fair trial, and malicious prosecution is not an isolated incident.  Defendant CITY OF NEW YORK is aware, from lawsuits, notices of claims, press accounts, and complaints filed with the NYPD's Internal Affairs Bureau, and the CITY OF NEW YORK's Civilian Complaint Review Board, that many NYPD officers, including the defendants, abuse their authority and are insufficiently trained regarding the application of force in light of the facts and circumstances confronting them in the course of citizen-police encounters and what constitutes probable cause for an arrest.  Further, these officers routinely apply excessive force in the course of these encounters while their fellow police officers either actively participate in or fail to intervene to prevent this unconstitutional conduct; and, upon applying such force, these officers engage in falsification, including, but not limited to, charging victimized citizens with resisting arrest and disorderly conduct.  See, e.g., Graham v. City of New York, 928 F. Supp. 2d 610 (E.D.N.Y. Mar. 6, 2013) (lawsuit against the City of New York and individual NYPD officers for the officers' use of excessive force and violation of civil rights); Rodriquez v. City of New York, 10 Civ. 9570 (PKC) (KNF), 2012 WL 1658303, at *1 (S.D.N.Y. May 10, 2012) (same); Tucker v. City of New York, 704 F. Supp. 2d 347 (S.D.N.Y. 2010) (same); Williams v. City of New York, 06-CV-6601 (NGG), 2009 WL 3254465, at *1 (E.D.N.Y. Oct. 6, 2009) (same); Stroe v. City of New York, 02 CV 1036 (RRM) (LB), 2008 WL 4513823, at *1 (E.D.N.Y. Sept. 26, 2008) (same). See also Ashley Southall & Marc Santora, Remembering a Man Whose Death Made Him a Symbol of a Divide: Mourners Demand Justice for Staten Island Man in Chokehold Case, N.Y. TIMES, July 23, 2014, http://www.nytimes.com/2014/07/24/nyregion/mans-dying-words-in-police-custody-become-rallying-cry-before-his-funeral.html?_r=0  ("'I  can't  breathe,'  Eric

Garner had said over and over again last Thursday after he was apparently placed in a chokehold by the police and wrestled to the ground, accused of illegally peddling cigarettes. . . .   The [NYPD] has banned the use of chokeholds since 1993.  In 1994, a Bronx man was killed by an officer using the grip.  Despite the ban, complaints of officers' using chokeholds have steadily come before the Civilian Complaint Review Board.  From 2009 to 2013, the board received 1,022 such complaints."); Rocco Parascandola & Thomas Tracy, NYPD puts Brooklyn cop on desk duty for reportedly stomping on suspect who lay on ground, N.Y. DAILY NEWS, July 26, 2014, http://www.nydailynews.com/new-york/brooklyn/brooklyn-desk-duty-reportedly-stomping -man-article-1.1880818; ("A Brooklyn cop was put on modified assignment Friday after allegedly stomping on a suspect's head, authorities said.  NYPD Officer Joel Edouard, 36, had subdued Jahmil-El Cuffee on suspicion of marijuana possession on Malcolm X Blvd. in Bedford-Stuyvesant at 8 p.m. Wednesday – and then he booted the man as he lay on the ground, officials said."); Robert Gearty, Bronx man suing NYPD for excessive force for a rough arrest captured on cell phone video, N.Y. DAILY NEWS, Sep. 10, 2012, http://www.nydailynews.com/new-york/bronx/bronx-man-suing-nypd-excessive-force-rough-arrest-captured-cell-phone-video-article-1.1156308 (A Bronx man sued the City of New York and the individual NYPD officers for excessive force: "The video lasts about one minute and appears to show then 19-year-old Luis Solivan being pummeled in the face several times by one officer as the other cop pinned him down. . . . [T]he two officers chased Solivan into his home for no reason, pepper-sprayed him and beat him with their hands and a walkie-talkie.  Solivan's mother and two younger brothers were in the University Avenue apartment at the time.  After Solivan was hand-cuffed, he was kicked and his head was thrust into a wall so hard the impact left a hole . . . ."); Daniel Beekman, Man wins $2.5 million in lawsuit against NYPD cops over using excessive force, N.Y.

8

DAILY NEWS, Dec. 19, 2013, http://www.nydailynews.com/new-york/man-wins-2-5m-suit-nypd-article-1.1552534 (The plaintiff sued the City of New York and the individual NYPD officers and the jury awarded him $2,500.000.00 in damages at trial because an NYPD officer "threw him down and kicked him in the knee," causing a ripped ligament and serious knee damage, simply because the plaintiff was watching a fight outside of a bar.); Kevin Deutsch, Lawyer for drug suspect who was beaten by cops demands special prosecutor, N.Y. DAILY NEWS, Feb. 6, 2012,   http://www.nydailynews.comnews/crime/lawyer-drug-suspect-beaten-cops-demands-special-prosecutor article1.1018037#ixzz2vs7snZ6M (describing the case of Jateik Reed, who was brutally assaulted by NYPD officers in the Bronx and the incident was captured on video). See also NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD, "Bi-Annual Report, January - June 2013 Report," http://www.nyc.gov/html/ccrb/downloads/pdfCCRBsemi2013_jan_June.pdf ("In the first half of 2013, excessive use of force was alleged in 55% of complaints compared to 49% in 2012 . . . ."); NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD, "2012 Annual Report," http://www.nyc.gov/html/ccrb/downloads/pdf/ccrb_annual_2012.pdf ("In 2012, 50% of all complaint contained one or more force allegations, compared to 48% in 2011.").

34.     Defendant CITY OF NEW YORK is further aware that such conduct and improper training has often resulted in deprivations of civil rights.  Despite such notice, Defendant CITY OF NEW YORK has failed to take corrective action.  This failure caused the defendants to violate Mr. Gonzalez's civil rights.

35.     Moreover, upon information and belief, Defendant CITY OF NEW YORK was aware that, prior to this incident, the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers.  Despite such notice, Defendant CITY of NEW YORK has retained these officers and failed to adequately train,

supervise, and discipline them.

36.     As a result of the foregoing, Plaintiff SAUL GONZALEZ, JR., has sustained, among other damages, physical injuries, substantial pain, mental injuries, emotional distress, embarrassment, humiliation, fear, and deprivation of his constitutional rights and liberty.

## FEDERAL CLAIMS

### AS AND FOR A FIRST CAUSE OF ACTION
(Deprivation of Rights Under 42 U.S.C. § 1983)

37.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "36" with the same force and effect as if fully set forth herein.

38.     All of the aforementioned acts of the defendants, their agents, servants, and employees were carried out under the color of state law.

39.     All of these aforementioned acts deprived Plaintiff SAUL GONZALEZ, JR., of the rights, privileges, and immunities guaranteed to United States citizens by the Fourth and Fourteenth Amendments to the United States Constitution and were in violation of 42 U.S.C. § 1983.

40.     The individual defendants carried out these illegal acts in their capacity as police officers, with the entire actual and/or apparent authority attendant to their office.

41.     The individual defendants carried out these illegal acts in their capacity as police officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant CITY OF NEW YORK and the NYPD, all under the supervision of ranking officers of the NYPD.

42.     The defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the United States Constitution.